UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAMELA R. SIEGLER,

                  Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                  Defendant.

Case No. 3:10-cv-05419-BHS-KLS

REPORT AND RECOMMENDATION

Noted for May 20, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On April 18, 2005, plaintiff filed an application for disability insurance benefits, alleging disability as of January 1, 2001, due to edema in her legs, poor coordination, concentration difficulties, being prone to with falling, chronic pain, depression, diabetic neuropathy, bladder and bowel incontinence, and hearing loss. See Tr. 32, 93, 166.  Her application was denied on initial administrative review and upon reconsideration.  See Tr. 32, 80, 84.  A hearing was held

REPORT AND RECOMMENDATION - 1

before an administrative law judge ("ALJ") on June 5, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 1209-34.

On December 27, 2007, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 32-38. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 29, 2010, making the ALJ's decision defendant's final decision. See Tr. 7; see also 20 C.F.R. § 404.981. On June 15, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on September 8, 2010. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing her credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her to be capable of returning to her past relevant work. But for the reasons set forth below, the undersigned disagrees that defendant erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See

REPORT AND RECOMMENDATION - 2

Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was June 30, 2002. See Tr. 34. Therefore, to be entitled to disability benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II. The ALJ's Evaluation of the Medical Evidence in the Record

At step two of the sequential disability evaluation process, the ALJ found that for the period of time from the date plaintiff alleged she became disabled, January 1, 2001, through the date her insured status expired, June 30, 2002, she had a "**severe combination of impairments**" consisting of diabetes mellitus, low back musculoskeletal pain and stress urinary incontinence.[1]

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of that process, the ALJ must determine if an impairment is "severe." See 20 C.F.R. § 416.920. At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1; see also SSR 85-28, 1985 WL 56856 *3 (impairment is not severe if evidence establishes slight abnormality that has no more than minimal effect on ability to work); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). This step two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

REPORT AND RECOMMENDATION - 3

Tr. 34 (emphasis added). The ALJ went on to find that during the same period, plaintiff had the residual functional capacity to perform a full range of sedentary work.[2] Tr. 35. Plaintiff argues the ALJ erred in failing to properly consider medical evidence in the record that documented the existence of these and other physical and mental impairments before and after the above relevant period of time.[3] Specifically, plaintiff asserts that because she had these serious limitations both before and after the relevant time period in this case, "it stands to reason that she had these same conditions during" that period. ECF #12, p. 3.

Plaintiff's argument, however, is faulty for two reasons. First, plaintiff merely speculates that the presence of diagnosed impairments prior to and after the relevant time period necessarily establish the existence thereof during that period. But the ALJ – and the Court for that matter – must base his decision only on the evidence contained in the record that bears on the question of plaintiff's disability during the relevant time period. As to that evidence, none of the documents in the record plaintiff cites actually establish the presence of work-related limitations greater than those found by the ALJ for this period. Nor has the undersigned's review of those and the other medical documentation in the record revealed any.[4] Thus, while it may be that plaintiff had all or some of the impairments she asserts she had during the relevant time period, "mere existence of an impairment [or of symptoms related thereto] is insufficient proof of a disability" Matthews

---

[2] If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant can perform based on all of the relevant evidence in the record, and must result from his or her medically determinable physical or mental impairments. See id.

[3] Those impairments include obesity, her diabetes mellitus, edema, neuropathy, arthritis, bowel incontinence, low back, hip and upper extremity pain, fibromyalgia, her urinary tract infections/incontinence, hearing loss, and other impairments that caused fatigue. See ECF #12, pp. 4-14.

[4] Indeed, the only medical source opinions in the record that address the issue of what mental or physical functional limitations plaintiff had during the relevant time period, found the evidence provided an insufficient basis on which to assess any. See Tr. 492-504, 961-87.

REPORT AND RECOMMENDATION - 4

v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

The ALJ has the responsibility for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the objective medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989). In addition, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

Here, the ALJ found in relevant part in regard to the medical evidence in the record:

The majority of the medical evidence in the record relates to care received many years prior to January 1, 2001, the date the claimant alleges she became

REPORT AND RECOMMENDATION - 5

>unable to work, and a substantial number of records also relate to the period long after, June 30, 2002, the date that the claimant's insured status expired.
>
>Medical records covering the period from January 1, 2001, the date the claimant alleges she became unable to work, through June 30, 2002, the date the claimant was last insured for benefits, document conservative treatment for poorly controlled insulin-dependent diabetes mellitus, low back musculoskeletal pain, and stress urinary incontinence. Exams also document obesity, given the claimant's weight of over 200 pounds, on her frame of 5'8". Exams document no diabetic retinopathy, and visual acuity corrected to 20/20 bilaterally as of April 2001. An April 2002 x-ray, which was taken to evaluate complaint of a history of pain secondary to a fall reportedly sustained by the claimant when chasing her husband in the yard and tripping over their dog, showed normal acromioclavicular joints and normal right shoulder. There are further no objective or clinical findings of edema, neuropathy, fibromyalgia, restless leg syndrome, cellulitis, carpal tunnel syndrome, arthritis, hearing loss, or dysfunction involving the lower extremities for the period from her alleged onset of disability of January 1, 2001 through June 30, 2002, her date last insured. There is further no documentation of any treatment provided for depression or other mental disorder prior to June 30, 2002. Subsequent radiology studies taken in January 2003 further showed only mild medial compartment degenerative changes in the right knee and right ankle, and studies taken in June 2003 revealed only mild multilevel degenerative changes in the lumbar spine and mild degenerative changes in the hips. A subsequent September 2004 brain MRI was also unremarkable, and a September 2004 MRI of the spine showed mild heterogeneity to the thoracic cord and very mild discogenic disease in the thoracic and cervical spines. [Exhs. 3F, 7F, 22F, 29F]
>
>Following the hearing, the record in this case was left open for a period of more than thirty days to allow the claimant and her attorney further opportunity to obtain additional evidence. The claimant's attorney has had the opportunity to make three requests for medical records relating to care reportedly received while the claimant was at Wright-Patterson AFB for the period from June 1998 through November 2001. These records have not . . . as yet been received, and no indication has been provided as to the date that such records will be submitted. The undersigned therefore considers the record in this case to now be closed [Exhs. 25F, 30F, 31F]

Tr. 36-37. The undersigned finds the ALJ's above summary accurately reflects the state of the

medical evidence in the record, and, as noted above, none of the other documents plaintiff cites

to contradict the ALJ's analysis thereof, at least in regard to the presence of actual work-related

limitations during the relevant time period.

REPORT AND RECOMMENDATION - 6

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the ALJ's control. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Plaintiff alleges the ALJ erred in failing to properly take into consideration his testimony regarding the existence of the physical and mental impairments discussed above.  Specifically,

REPORT AND RECOMMENDATION - 7

plaintiff asserts the ALJ gave only one reason for not finding him completely credible – namely his activities of daily living – which plaintiff further asserts was not legitimate. But although as discussed below, the undersigned agrees this was not a proper reason for discounting plaintiff's credibility, the ALJ did give other valid reasons for doing so.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

As noted above, the ALJ found in relevant part that:

> . . . [T]he claimant's testimony regarding her activities of daily living as of June 2002, the date she was last insured for benefits, is further not inconsistent with a capacity for sedentary exertion. Upon questioning at the hearing, the claimant admitted that as of June 2002 when she was last insured for benefits, she was able to do some driving, cooking, laundry and grocery shopping, and spent time watching some television and also doing some reading.

Tr. 37. The undersigned agrees with plaintiff that the evidence in the record regarding activities of daily living is not necessarily indicative of an ability to perform full-time sedentary work. See Tr. 121, 123-24A, 126-36, 139-43, 145-46, 166, 173, 199, 203, 218, 220-23, 225-26, 999-1001, 1003, 1005-06, 1008, 1220, 1223-24, 1229-31; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (recognizing that disability claimants should not be penalized for attempting to lead normal lives in face of their limitations). As such, the ALJ erred in relying on this reason to discount plaintiff's credibility.

On the other hand, also as noted above, the ALJ properly pointed out that the objective medical evidence in the record was not consistent with plaintiff's claims regarding her symptoms

REPORT AND RECOMMENDATION - 8

and limitations. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's complaints are inconsistent with clinical observations can satisfy the clear and convincing requirement).  In addition, the ALJ did not err in discounting her credibility because she received no "acute treatment" for her alleged physical impairments or any "mental health care" for her depression during the relevant time period. Tr. 37; see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking treatment can cast doubt on sincerity of claimant's testimony); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that her pain was not sufficiently severe to motivate her to seek treatment was powerful evidence regarding extent of that pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

Accordingly, while one of the reasons the ALJ gave for discounting plaintiff's credibility in this case was improper, this did not render the ALJ's credibility determination overall invalid, as it is supported by substantial evidence in the record. Tonapetyan, 242 F.3d at 1148.  Thus, that determination should be upheld.

IV.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

REPORT AND RECOMMENDATION - 9

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains statements from plaintiff's husband and sister, in which they set forth what they had observed of her symptoms and limitations since the period prior to June 30, 2002. See Tr. 999-1008. Plaintiff argues the ALJ erred by failing to state any reasons for not accepting these statements. But immediately after summarizing plaintiff's own testimony and self-reports, and then referencing in that very same paragraph the statements of plaintiff's husband and sister, the ALJ immediately went on to explain why he found the objective medical and other evidence in the record did not support the symptoms and limitations being claimed. See Tr. 37. As noted above, the reasons the ALJ gave included inconsistency with the medical evidence in the record and a lack of serious and consistent treatment. These reasons are germane to plaintiff's husband and sister as well. See Lewis, 236 F.3d at 511; see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); Vincent, 739 F.2d at 1395 (proper to discount lay testimony that conflicts with available medical evidence); but see Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (improper to discredit testimony of claimant's wife as not supported by medical evidence in record).[5]

---

[5] In so holding, the Ninth Circuit in Bruce relied on its prior decision in Smolen, which held that the ALJ improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms, because in so doing the ALJ violated the Commissioner's directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." Bruce, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original). The Court of Appeals, however, did not address its earlier decisions in Bayliss, Lewis and Vincent, in which, as discussed above, it expressly held that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Lewis, 236 F.3d at 511 (citing Vincent, 739 F.2d at 1995); see also Bayliss, 427 F.3d at 1218. Accordingly, although Bruce is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of Bayliss, Lewis or Vincent was made in that case, and that none of the holdings in those earlier decisions concerning this issue were expressly reversed, it is not at all clear whether discounting lay witness evidence on the basis that it is not supported by the objective medical evidence in

REPORT AND RECOMMENDATION - 10

V.  The ALJ's Assessment of Plaintiff's Residual Functional Capacity

As noted above, the ALJ found plaintiff had the residual functional capacity to perform a full range of sedentary work. See Tr. 35.  Plaintiff argues that RFC assessment fails to accurately reflect all of her functional limitations.  But because, as discussed above, the ALJ did not err in evaluating the medical and other evidence in the record, including plaintiff's testimony and the statements of her husband and sister, plaintiff has not met her burden of proof on this issue. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (plaintiff has burden of proof in regard to steps one through four of the sequential disability evaluation process).

VI.  The ALJ's Step Four Determination

As just noted, plaintiff has the burden at step four of the disability evaluation process to show she is unable to return to her past relevant work. See Tackett, 180 F.3d at 1098-99.  At this step, the ALJ found that based on the above RFC assessment and the testimony of the vocational expert, plaintiff could return to her past relevant work as a financial advisor, teacher's aide and medical appointment clerk, all of which "involved sedentary exertion, according to the opinion of the vocational expert." Tr. 37-38 ("In comparing the residual functional capacity the claimant had as of the date last insured with the physical and mental demands of this work, . . . [plaintiff] was able to perform it as it was generally performed."); see also Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (recognizing that to find claimant not disabled at step four of disability evaluation process, ALJ must find he or she is able to perform either actual functional demands and job duties of particular past relevant job or functional demands and job duties of occupation as generally required by employers throughout national economy).

Plaintiff argues, and defendant concedes, that the record establishes she did not perform

---

the record is no longer allowed.  Plaintiff, though, has not challenged this basis for discounting plaintiff's mother's statement.  Accordingly, the undersigned shall treat those earlier holdings as being still good law.

REPORT AND RECOMMENDATION - 11

the job of teacher's aide, which is skilled work, long enough –only for a period of four months – for it to constitute past relevant work. See Tr. 1213, 1231; 20 C.F.R. § 404.1565(a) (past relevant work is work that was performed within last 15 years, that lasted long enough for it to be learned and that constitutes substantial gainful activity); SSR 00-4p, 2000 WL 1898704 *3 ("[S]killed work corresponds to an SVP [specific vocational preparation] of 5-9 in the DOT [Dictionary of Occupational Titles]."); DOT, Appendix C, 1991 WL 688702 (SVP is amount of lapsed time required by typical worker to learn techniques, acquire information, and develop facility needed for average performance in specific job-worker situation; SVP level of 5 requires over 6 months and up to and including 1 year). As defendant points out, though, the vocational expert testified and the ALJ found plaintiff was capable of performing the jobs of financial advisor and medical appointment clerk as well, neither of which plaintiff has alleged she did not perform long enough to constitute past relevant work. See Tr. 1214-15, 1232.

Plaintiff goes on to argue that the ALJ did not comply with the requirements of SSR 82-62, 1982 WL 31386, which states in relevant part that "[i]n finding that an individual has the capacity to perform a past relevant job," the ALJ's decision "must contain among the findings the following specific findings of fact:

    1. A finding of fact as to the individual's RFC.

    2. A finding of fact as to the physical and mental demands of the past job/occupation.

    3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Id. at *4. But this is exactly what the ALJ did, by assessing plaintiff with the above RFC, and by finding both that his past relevant work was sedentary in nature and that his RFC would permit a return to that work. See Tr. 37-38. No error therefore was committed here.

REPORT AND RECOMMENDATION - 12

VII. <u>The ALJ's Duty to Develop the Record</u>

The ALJ has the responsibility "to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Tonapetyan</u>, 242 F.3d at 1150 (citations omitted). But it is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered. <u>Id.</u> (citations omitted); <u>see also</u> <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001). Plaintiff argues that rather than find him to be not disabled based on a lack of objective medical evidence, the ALJ should have sought to develop the record further in light of his own testimony, the lay witness statements, and the other evidence in the record that concern those periods prior to and after that which is relevant here.

The undersigned, however, finds the record in this case was neither ambiguous nor at all inadequate for the ALJ to make a proper non-disability determination. Plaintiff confuses a lack of evidentiary support for her claim with the requisite showing of ambiguity or inadequacy in the record necessary to trigger the ALJ's duty to further develop the record. That is, it is not that the ALJ was unable to resolve plaintiff's claim due to such issues, but that the evidence in the record simply did not support that claim. This is especially true in that, as discussed above, the ALJ did not err in evaluating the medical or lay witness evidence in the record, or in declining to give full credit to plaintiff's own subjective complaints.

VIII. <u>Evidence Submitted to the Appeals Council</u>

The record contains a number of records plaintiff submitted to the Appeals Council after the ALJ already had issued his decision. <u>See</u> Tr. 1100-1208. That evidence covers a period from mid-October 1996, through late October 2002. <u>See id.</u> Plaintiff argues this evidence should be considered, because under <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1454 (9th Cir. 1993), new evidence

REPORT AND RECOMMENDATION - 13

submitted for the first time to the Appeals Council becomes part of the record for judicial review. Defendant concedes that under Ramirez, the Court may consider such evidence in determining whether the ALJ's decision is supported by substantial evidence overall. See 16 8 F.3d at 1451-52; see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing to Ramirez in finding that additional materials submitted to Appeals Council properly may be considered, because they were addressed by Appeals Council in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (again citing to Ramirez to hold evidence submitted to Appeals Council is part of record on review to federal court).

Defendant, however, cites to Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001), to argue that before this Court may remand this case for further consideration, plaintiff first must show the additional evidence she submitted for the first time to the Appeals Council is "new" and "material" and she had "good cause" for not submitting it earlier. But as plaintiff points out, the Ninth Circuit in Mayes expressly stated that it had not decided whether good cause is required to review evidence for the first time to the Appeals Council:

> We need not decide whether good cause is required for submission of new evidence to the Appeals Council, as [the claimant] conceded in her briefs that good cause was indeed required. In a petition for rehearing, which we deny, [the claimant] raises for the first time the argument that 20 C.F.R. § 404.970(b)(2001) requires the Appeals Council to receive new evidence without regard to the issue of good cause. Citing *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir.1993), [the claimant] belatedly argues that good cause is required only when new evidence is submitted to a district court. Mayes misapprehends *Ramirez*. Because the parties agreed that the new evidence submitted for the first time to the Appeals Council should be considered, *id.* at 1451-52, *Ramirez* does not address whether submissions to the Appeals Council are or are not subject to the good cause requirement.

Id. at 461 n.3 (emphasis added). Regardless of whether good cause is required to be shown, and whether plaintiff is able to establish good cause here, none of the evidence submitted for the first time to the Appeals Council warrants remand for further administrative proceedings, given that it

REPORT AND RECOMMENDATION - 14

suffers from the same infirmities as the other evidence discussed above. Namely, that evidence fails to establish the existence of actual work-related limitations for the relevant time period that are more severe than those the ALJ included in his RFC assessment.

## CONCLUSION

Based on the foregoing discussion, the Court should find defendant properly concluded plaintiff was not disabled. Accordingly, the Court should affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 20, 2011**, as noted in the caption.

DATED this 28th day of April, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15